McGOVERN, Trustee in bankruptcy, Appellant, vs. ECKHART, imp., Respondent.

*October 10—November 5, 1929.*

66

68

For the appellant there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady.*

For the respondent there was a brief by *C. J. Smith,* attorney, and *J. Henry Bennett,* of counsel, both of Viroqua, and oral argument by *Mr. Smith.*

ESCHWEILER, J. Respondent Eckhart elected to demur to the amended third cause of action rather than to have resorted to what would seem the much more orderly and appropriate procedure of a motion to have the complaint made more definite and certain. *Simpson v. Cornish,* 196 Wis. 125, 133, 218 N. W. 193; *McIntyre v. Carroll,* 193 Wis. 382, 387, 214 N. W. 366; *Lawver v. Lynch,* 191 Wis. 99, 101, 210 N. W. 410.

We find great difficulty in determining from the amended third cause in this complaint as it appears in the record, just what allegations, found in the first and second causes of action, are intended to be made a part of the third, and this in spite of what this court said in reference to such point in the first opinion, 192 Wis., particularly at p. 563. As now presented, the complaint does expressly make some of the allegations of the preceding causes a part of this one, but refers to other paragraphs or allegations in the preceding causes without making them a part of this one, and leaves out any direct references to certain paragraphs or allegations of the preceding causes although inferential references seem to be made to such omitted matters.

In order, however, to finally, as we sincerely hope, dispose of the pleadings in this matter so that this litigation can end, we shall assume, for the purpose of disposing of this present appeal, that by the third cause of action the

pleader intended to assert, as against Eckhart, a common-law action for fraud because he unlawfully and improperly obtained from Kraus his promissory note, chattel mortgage, bill of sale, and real-estate mortgage and fraudulently conveyed such to defendant Glick, who was or claimed to be an innocent holder thereof, and that such perpetration of a fraud resulted in a damage to the defendant Kraus which can be lawfully asserted by the plaintiff as trustee in bankruptcy.

That in addition thereto it is intended to assert that the transactions between Kraus and Eckhart culminating in the giving of a promissory note as a result of their transactions was, as to Eckhart, in violation of the penal statute, sec. 116.03, which is given in substance in what appears quoted above as paragraph 7 of said third cause.

If a cause of action on behalf of the plaintiff trustee as against Eckhart can be spelled out of the complaint on either or both of such theories, then the demurrer was improperly sustained. Respondent's remedy, if there was an improper mingling of two or more causes of action, would have been by motion rather than by demurrer. Ernest v. Schmidt, 199 Wis. 440, 223 N. W. 559, 227 N. W. 26.

On the second appeal of this case, 196 Wis. 178, 181, 218 N. W. 830, it was said as to the there presented third cause of action before its present amendment, as follows:

"We express no opinion as to the right of the trustee to a common-law right of action for damages by reason of a fraud perpetrated on Kraus by Eckhart, if any."

As to the question thus reserved on the second appeal, we deem it sufficient to say that as we now view the presently alleged third cause of action there are sufficient facts stated therein upon which there could be properly predicated a common-law action for damages as the result of a fraud.

The demurrer, therefore, should have been overruled to this amended third cause of action so far as it is viewed as setting forth a common-law action of fraud, and there being

no question but that the trustee in bankruptcy of Kraus, the plaintiff here, may maintain in his official capacity such a cause of action, if one exists, the holding as we have just indicated properly might, would, and should, in many cases, be sufficient to dispose of this appeal by a reversal of the ruling of the court below. We have determined, however, to now again consider a far more important and far-reaching question which is presented on this appeal, namely, whether the doctrine so often declared by this court, known as the "law of the case," shall be in the present instance adhered to and be the final law of this case.

From as early a period in this court's history as it well could be up to a time as late as it could be, it has as consistently as any court of last resort, and much more insistently than many, declared and followed the doctrine that on a second appeal here in the same case no other conclusion will be reached than that on the first appeal, on any and all legal propositions first therein passed upon and decided.

In *Parker v. Pomeroy*, 2 Wis. 112, decided in the December term of 1853, involving a second appeal in a case that had been determined two years previously under a former organization of the supreme court, it was held (p. 122) that, however much the then court might differ with the conclusion of the prior decision, it must be held, for all the purposes of the then present case, *res. adjudicata*.

In the same volume, in *Downer v. Cross* (p. 371), the same situation was presented and the same ruling made.

Again in the June term of 1854 in *Cole v. Clarke*, 3 Wis. 323, at p. 329, it was held that the former decision by the supreme court in that very case "was the law of the case, and must be held *res adjudicata*." As late as February 5, 1929, in *Estate of Neitman*, 198 Wis. 127, 223 N. W. 558, it is stated that the same case had been before this court and "all questions there decided are the law of the case."

In the unbroken line and long stream of cases between

those just above cited, a period of over seventy-five years, this court has adhered steadfastly to the rule.

While some courts base the rule upon the doctrine of *stare decisis,* some on the doctrine of *res judicata,* and others on both doctrines, as is shown in the long list of cases in 4 Corp. Jur. p. 1096, yet in this court it seems to have been predicated, wherever expressions are found on that point, upon the doctrine of *res adjudicata* (or *judicata*) as shown in the first citation just above from 2 Wis., and as also expressly stated in such decisions as *Keystone L. Co. v. Kolman,* 103 Wis. 300, at p. 303, 79 N. W. 224, and *Hill v. American Surety Co.* 112 Wis. 627, at p. 630, 88 N. W. 642.

This court has held that a legal proposition once declared in a particular case on a first appeal becomes the law of the case on all future trials or appeals, whether *right* or *wrong,* and that, too, even though in the interval between the two appeals the rule of law upon which the first was based has been changed by this court itself, as was the situation in *John v. Pierce,* 176 Wis. 220, 223, 224, 186 N. W. 600. It is again repeated in *Kramer v. Chicago & M. E. R. Co.* 179 Wis. 453, 454, 190 N. W. 907. And even though the first decision was by a divided court, which has the effect of affirming the decision of the lower court, that first decision is still the law on subsequent appeals. *Zohrlaut v. Mengelberg,* 158 Wis. 392, 401, 148 N. W. 314, 149 N. W. 280.

It has also been held that questions of law involved in a former appeal, whether thought of, suggested, or argued or not, are foreclosed by the former decision (*Lutien v. Kewaunee,* 151 Wis. 607, 609, 139 N. W. 312); and to the same effect, *Legault v. Malacker,* 166 Wis. 58, 60, 163 N. W. 476, 1 A. L. R. 1109.

The only case we find which seems to have varied in the slightest degree from this hard-and-fast rule may perhaps be *Prahl v. Hogensen,* 190 Wis. 419, 420, 209 N. W. 669, involving one of several cases growing out of the same auto-

mobile accident, where, on the first appeal, the verdict as to damages was deemed perverse and inadequate and the case sent back for a new trial, and on the subsequent appeal it was said that the court below was correct in interpreting the former decision as *sub silentio* determining that the question of negligence of both parties was one for the jury (p. 420), and it was then held that such interpretation was correct although it was not the intention of this court on the first appeal to go further than to declare that the verdict was perverse, but that the court should have gone further and determined some of the questions of negligence as a matter of law, as was done in the companion case of *Rubach v. Prahl,* 190 Wis. 421, 424, 209 N. W. 670.

How like adamant the rule has been in this state is well illustrated in the prior decisions in this very case, 192 Wis. 558, 213 N. W. 332, and 196 Wis. 178, 218 N. W. 830, discussed later.

While this court has remained steadfast in its adherence to the inflexible "right or wrong" rule for the "law of the case" in company with other courts such as are instanced by the following decisions among others that might be cited: *Atlanta v. Smith,* 165 Ga. 146, 140 S. E. 369; *Armstrong v. Harshman,* 93 Ind. 216; *Re McGraw,* 233 Mich. 440, 207 N. W. 10, 42 A. L. R. 1283; *Neary v. N. P. R. Co.* 41 Mont. 480, 110 Pac. 226; *Steinman v. Clinchfield C. Co.* 121 Va. 611, 93 S. E. 684; *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, yet many courts have of recent years substantially modified and changed the application of that doctrine. 2 Ruling Case Law, p. 226; 4 Corp. Jur. p. 1096.

The earliest decisions of this court on this rule found in the two cases from 2 Wis., cited *supra,* were each placed upon the one cited authority of *Washington Bridge Co. v. Stewart,* 3 How. (44 U. S.) 413 (in 1845). That opinion asserted the want of power in that supreme court to review its

own judgments or decrees (p. 425), and that appellate power is exercised over the proceedings of inferior courts, not on those of the appellate court, and that a supreme court has no power to review its decisions, whether in a case at law or in equity (p. 426). No direct statement is made in that authority that the result there reached was because the prior decision was *res judicata.*

In *Illinois v. Ill. Cent. R. Co.* 184 U. S. 77, 92, 22 Sup. Ct. 300, in passing upon the effect of a prior decision, the denial of the right to a second review in a court of last resort on the same questions disputed on the first was said to be to prevent endless litigation, citing in a note the *Washington Bridge Co. Case, supra,* and others.

In *Great Western Tel. Co. v. Burnham,* 162 U. S. 339, 16 Sup. Ct. 850 (in 1896), error to the circuit court for Milwaukee county, the court referred with evident approval to the cited rulings of this court, namely, that it "has always declined to reconsider any question of law decided upon the first appeal" (p. 343), and saying, also on p. 343, that the Wisconsin court has done no more than the United States supreme court has always done or than is necessary to enable an appellate court to perform its duties satisfactorily and efficiently, which would be impossible if a question once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal. Citing the *Washington Bridge Co. Case, supra,* and others.

In *Thompson v. Maxwell L. G. & R. Co.* 168 U. S. 451, 18 Sup. Ct. 121 (in 1897), Mr. Justice BREWER states as the settled law of that court and of others, that "whatever has been decided on one appeal or writ of error cannot be re-examined on a second appeal or writ of error brought in the same suit. The first decision has become the settled law of the case." Page 456.

So it may well be noted that while our early decisions establishing the precedents for this court are stated to be

because the prior decision is *res adjudicata* (or *judicata*), yet the federal opinions do not seem to rest it upon that doctrine but upon the proposition that there ought to be finality in its decisions. But in *Messenger v. Anderson,* 225 U. S. 436, 32 Sup. Ct. 739, decided in 1912, however, citing the *Great Western Tel. Co. Case,* 162 U. S. 339, 16 Sup. Ct. 850, *supra,* and two subsequent cases, it was stated (p. 444) :

"In the absence of statute, the phrase 'law of the case,' as applied to the effect of previous orders on .the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

In 1922, in *Southern R. v. Clift,* 260 U. S. 316, 43 Sup. Ct. 126, citing among others the *Messenger Case, supra,* it is said (p. 319) : "The prior ruling may have been followed as the law of the case, but there is a difference between such adherence and *res judicata;* one directs discretion; the other supersedes it and compels judgment."

So that evidently the present holding of the federal courts is as expressed in *Higgins v. California P. & A. Grower, Inc.* 3 Fed. (2d) 896, 898, that "whatever may be said of earlier decisions, it is now well settled that the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." And again, in *Ill. Cent. R. Co. v. Crail,* 31 Fed. (2d) 111, that it is within the power of the courts to disregard the rule of "law of the case" in the interests of justice, though it is the general practice of courts to refuse to "reopen what has been decided," citing a number of federal· cases, including some of those cited herein. The case of *Wm. Wrigley Jr. Co. v. Larson Jr.* 5 Fed. · (2d) 731, 735, is seemingly out of line with the others in that the rule is there stated in its old form with no limitations.

There is a very complete discussion of the rule and many cases cited and discussed in the case of *Johnson v. Cadillac Motor Car Co.* 261 Fed. 878, 8 A. L. R. 1023, in which

there is cited (p. 884), with quite evident relish and approval, language from the Georgia court (*Ellison v. Georgia R. Co.* 87 Ga. 691, 13 S. E. 809), viz.:

"Some courts live by correcting the errors of others and adhering to their own," and that the rule of a supreme court should be, "when satisfied that it has fallen into great error, that in the majesty of its duty as well as in the majesty of its power then the rule should not be '*stare decisis*' but '*fiat justitia ruat coelum!*' And further, that "the rule is not an inexorable one and should not be adhered to in a case in which the court has committed an error which results in injustice, and at the same time lays down a principle of law for future guidance which is unsound and contrary to the interests of society."

Among the state courts presently recognizing substantial modifications in the old rule the grounds for such departure have been stated as follows: *Underwood v. Caruthersville,* 197 Mo. App. 358, 194 S. W. 1090 (in 1917), that the rule there was to reconsider questions formerly adjudicated in the same case, "where there were cogent and convincing reasons for doing so, and especially has this been the case where the former ruling inadvertently overruled and nullified the statute, or overruled some sound and well settled principle of law." Page 364, citing a number of Missouri decisions. And in one of such cases, *Mangold v. Bacon,* 237 Mo. 496, 140 S. W. 650 (in 1911), there is a very complete discussion of this question, and as there pointed out at page 517, the general rule does not really involve the doctrine of *res judicata,* and in that case, modifying the opinion on the first appeal, they say (p. 517):

"Whether from grace or right, when cogent and convincing reasons appear, such as lack of harmony with other decisions, and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact

has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

In *Henry v. Atchison, T. & S. F. R. Co.* 83 Kan. 104, 109 Pac. 1005, 28 L. R. A. n. s. 1088, it is recognized that the rule should generally be followed; but where it is "clear that the first decision was erroneous, and that not only in the case at bar will wrong result from adhering to the decision but also other interests through the state will be imperiled, the court may reconsider and reverse a prior decision in the same case."

In *Hastings v. Foxworthy,* 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321, with a very full note in the L. R. A., it was held that the appellate court is not bound to follow the first opinion in the same case on questions of law and should re-examine and reverse where the first opinion is manifestly incorrect,—this case being cited with evident approval in *Stratton v. Bankers Life Co.* 102 Neb. 755, 169 N. W. 722. See, also, *Farmers State Bank v. Clayton Nat. Bank,* 31 N. M. 344, 245 Pac. 543, 46 A. L. R. 952; *School Directors v. Asheville,* 137 N. C. 503, 50 S. E. 279.

From our present consideration of this rule, which is properly a court-made rule as to the "law of the case," we deem that substantial justice will be best served by now, and in the future, modifying the practice heretofore established and so strictly followed in this jurisdiction, and that when, as now, we are convinced that the prior ruling in a particular case ought not to stand as the law for that case and other cases, we shall so hold and not deny to litigants or ourselves the right and duty of correcting an error merely because of what we may be later convinced was merely our *ipse dixit* in a prior ruling in the same case.

This court has many times on rehearings substantially changed positions from those originally taken, among the many instances of which *State ex rel. Postel v. Marcus,* 160 Wis. 354, 381, 152 N. W. 419, is a good illustration; it has time after time overruled its own prior decisions, and we shall therefore now, and hereafter, reserve unto ourselves a right to correct, and recognize the duty so to do, a prior ruling made by us in the same case, whenever cogent, substantial, and proper reasons exist.

We shall not now undertake to state what will be deemed necessary to exist in order to warrant us in holding on a second appeal contrary to what was held to be the law on a prior appeal.

The reasons prompting us in the present case are these:

On the first appeal we stood by the rule of the case of *Quiggle v. Herman,* 131 Wis. 379, 383, 111 N. W. 479, as to the construction to be given to the statute there and here involved, which makes a note void for want of compliance with the statute regulating the sale of certain personal property, and holding the taker and the maker of such a note, each under the statute's ban.

It was also there said, 192 Wis. at p. 561, that the plaintiff as trustee succeeded to all the rights of the defendant Kraus, the bankrupt. In the second appeal, 196 Wis. 178, we adhered to the ruling of the first appeal on this statute because of the "law of the case" (p. 180). In the second appeal, however, it was said (p. 180) : "The trustee has no greater right than the defendant Kraus had." Since the second appeal this court has had occasion to twice consider the rights of a trustee in bankruptcy under the federal law and decisions, and has reached and expressed the conclusion that such a trustee has greater rights in some instances, and particularly as to transactions in fraud of creditors, than the debtor himself would

have. *Sparks v. Kuss,* 195 Wis. 378, 391, 216 N. W. 929, 218 N. W. 208, and *Hickcox v. Schmidt,* 198 Wis. 624, 225 N. W. 140. The statement first above quoted from the second appeal in this case as to the rights of the trustee being no greater than those of the bankrupt must therefore be deemed withdrawn.

On the second appeal we expressly recognized, and now do so again, that the decision in the *Quiggle Case, supra,* was based upon a mistaken view as to the effect of the statutes there and here involved. Such prior ruling being upon the construction of a statute, on a matter of public policy declared by the legislature, and within its power to so declare, we ought not to hesitate to correct such mistaken pronouncement of ours as to such legislative public policy.

Besides that, the situation here presented, as it was on the first and second appeals herein, is not upon the merits and after trial between the parties, but is a ruling upon that which is merely a formative part of the case in determining questions arising upon the pleadings prior to trial. These considerations, as above outlined, warrant us now in also withdrawing what was said on the two former appeals as to the law surrounding the statutes involved as well as to the rule of the "law of the case," and in now declaring that the decision in *Quiggle v. Herman,* 131 Wis. 379, 111 N. W. 479, *supra,* is, on that proposition, overruled.

We therefore hold that upon the face of the pleading before us, so far as it relates to any alleged violation of sec. 116.03, *supra,* the defendant Eckhart came within the purport of the statute, being the seller of the goods and the taker of the note, and that such statute did not affect the status of defendant Kraus, and that those two defendants, therefore, were not necessarily, by reason of the statute, so *in pari delicto* as to bar the plaintiff trustee from a cause of action,

if any can be shown, arising out of the taking and transfer by Eckhart of the note given in alleged violation of that statute, and the demurrer, therefore, so far as it affects such possible cause of action, should also have been overruled.

*By the Court.*—Order reversed, and cause remanded with directions to overrule the demurrer to the amended third cause of action.